391 So.2d 308 (1980)
RUOTAL CORPORATION, N. W., INC., a Netherlands Antilles CORP., Authorized to Do Business in the State of Florida, Appellant,
v.
Anthony OTTATI, d/b/a the Juice Tree, Appellee.
No. 79-2515.
District Court of Appeal of Florida, Fourth District.
December 10, 1980.
John W. Kozyak of Mahoney, Hadlow & Adams, P.A., Miami, for appellant.
Christopher C. Cloney, Fort Lauderdale, for appellee.
*309 HERSEY, Judge.
In an action for wrongful eviction, appellee, Ottati, recovered a judgment based upon a jury verdict of $7,000 for damages resulting from loss of his business space in a shopping center. The landlord, Ruotal Corp., seeks reversal of the judgment on the basis that termination of the leasehold estate occurred as the result of mutual agreement or was otherwise warranted.
Ottati entered into possession of a shop in the Old Towne Shopping Center under a written lease with Old Towne Village of Broward, Inc. One Larry McGee executed the lease as agent for the landlord. The shopping center was subsequently acquired by Ruotal, subject to all existing leases. Larry McGee continued to be employed by Ruotal as manager. After some months of operation Ottati was advised in writing that his month to month tenancy was being terminated pursuant to Section 83.03(3) of the Florida Statutes. He was advised that legal action would be taken unless possession was relinquished by April 30, 1977. Ottati removed himself and his tangible personal property from the premises pursuant to the eviction notice. On or about May 1, 1977, the shopping center was closed and locked.
Ottati brought suit for damages for the loss of improvements made to the premises in reliance on the lease, loss of business occasioned by the termination, and the expenses of removing his business from the premises.
Ruotal contends that it was not aware of the written lease but that in any event Ottati voluntarily vacated the premises in response to the notice.
We are called upon to decide whether, under the circumstances of this case and the applicable law, a jury could properly find wrongful eviction.
We begin with the presumption of correctness which the law accords to this judgment and the principle that appellant has the burden to demonstrate error, Trushin v. City of Miami Beach, 328 So.2d 27 (Fla.3d DCA 1976).
One of appellant's contentions is that the written lease was not recorded and therefore was not binding on appellant, relying on Section 695.01 Florida Statutes (1979). The difficulty with that argument is that the statute applies only where the subsequent purchaser is without notice. Here appellant employed as its manager the very agent who executed this lease on behalf of its predecessor in title. It is axiomatic that knowledge of the agent constitutes knowledge of the principal as long as the agent received such knowledge while acting within the scope of his authority. Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc., 177 So.2d 365 (Fla.3d DCA 1965); 2 Fla.Jur.2d, Agency § 94 (1977).
Appellant's primary argument is that Ottati voluntarily relinquished his tenancy, so that, relying on Kanter v. Safran, 68 So.2d 553 (Fla. 1953), obligations under the lease came to an end. The case is distinguishable but even assuming its applicability here, its rationale does not lend support to appellant's position.
In Kanter, the court discusses two forms of surrender of possession. The first, express surrender, requires an express agreement between the parties and we clearly do not have that here. The second, surrender by operation of law, may be implied from certain circumstances and will depend upon the facts of each case. Ottati received a notice requiring him to vacate by a certain date or face the legal consequences. A jury could reasonably infer that his compliance was therefore coerced and not voluntary.
Appellant's secondary argument is that Ottati was evicted for failure to pay rent. There was evidence in the record from which the jury could have found that a rental deposit and a security deposit were available to cover rent deficiencies; that the deteriorating condition of the shopping center justified some abatement in rent; or that rental payments had nothing to do with the wrongful eviction, particularly in view of the reason for termination indicated by the written notice. Furthermore, there was no evidence of a demand for rent.
*310 We have not been directed to any circumstance nor has any case been called to our attention that would require that the jury's finding on this point be regarded as suspect.
We therefore affirm the verdict and judgment.
AFFIRMED.
DOWNEY and HURLEY, JJ., concur.